In the Matter of the Appraisal under the Transfer Tax Acts of the Property of BERNARD PETERS, Deceased.

JAMES A. SPERRY, Appellant; CAMILLA WRIGHT PETERS, Executrix, etc., of BERNARD PETERS, Deceased, and Others, Respondents.

*Will — an estate given in clear terms will not be cut down by any subsequent provision any less clear — when a death referred to is one during the testator's life.*

A testator who, at the time of his death, was engaged in conducting a newspaper, and who was survived by a widow, a son and two married daughters, left a will, apparently written or dictated by himself, by which he gave to his widow a life estate in all his property, both real and personal. He then disposed of his newspaper property by giving, "to my son-in-law William Cullen Bryant, enough to make the one-eighth interest I gave him during my lifetime, fully equal to one-sixth of this entire property. The remaining five-sixths I will and bequeath as follows: One sixth to my daughter Mary Whiting Bryant; one-sixth to my daughter Emily Sperry; one-sixth to her husband James A. Sperry, and two-sixths or one-third to my son Thomas Pollock Peters."

The will further provided:

"The remaining property I die possessed of, after the death of my wife, this to include every description of property I own, I will and bequeath as follows: One-third to Wm. C. Bryant and his wife Mary in two equal shares, one-sixth to each; one-third to James A. Sperry and his wife Emily in two equal shares, one-sixth to each; and one third — two-sixths to my son Thomas.

"The property I have thus willed to my daughter Emily, including her interest in the *Times* should she die without issue, I hereby will and bequeath to her sister Mary and her brother Thomas in equal shares. Should Mary die, I hereby will and bequeath all her property derived from me in equal shares to her child or children and the children of her lamented sister Julia, these children to rank equally as though they were the children of one and the same mother.

"The property I have hereby will* and bequeathed to James A. Sperry, one-sixth of all my possession, shall be his in full during his natural life, and shall be inherited by his children should he live to have lawful issue, whether by his present or any future lawfully wedded wife. His widow (should my daughter Emily die, and should he marry again), should she be childless, shall have her dower right respected. Beyond that, I will and bequeath this property, if James A. Sperry dies without lawful issue, to my legal heirs."

The testator directed that the newspaper business should be conducted "so long as any member or members of my family, *including my sons-in-law*, may retain a controlling interest in the establishment."

* *Sic.*

*Held,* that it was the intention of the testator to give his son-in-law, James A. Sperry, one-sixth of his estate in fee absolutely;

That, where an estate is given in one part of a will in clear and decisive terms, such estate cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate;

That the provisions of the will relative to the death of the said James A. Sperry, referred to his death during the lifetime of the testator.

*Semble,* that the provisions for the disposition of the shares given to the testator's daughters, Emily and Mary, in case of the death of either or both of them, also referred to a death occurring during the testator's lifetime.

APPEAL by James A. Sperry, one of the legatees under the last will and testament of Bernard Peters, deceased, from an order of the Surrogate's Court of the county of Kings, entered in said Surrogate's Court on the 3d day of December, 1901, assessing and fixing a transfer tax upon that portion of the estate of the said Bernard Peters, deceased, claimed by said Sperry as legatee and devisee.

*Joseph A. Burr,* for the appellant.

*George H. Fisher,* for the respondent executrix.

HIRSCHBERG, J. :

The determination of this appeal involves to a considerable extent the construction of the will of the deceased, and such construction is within the jurisdiction of the court in these proceedings. (*Matter of Estate of Ullmann,* 137 N. Y. 403, and cases cited.)

By his will the testator gave to his wife a life estate in all the property, real and personal, of which he subsequently died possessed. The remainder of his property, exclusive of certain immaterial legacies, he disposed of in these words: " Of the Brooklyn Daily Times property located at 24 & 26 Broadway, covering about six city lots, extending from Broadway to South Eighth Street, with about 22 feet on the latter and 44 feet on the former street with all the buildings located thereon and all the presses, fixtures and machinery and all other appurtenances thereunto belonging, after the death of my wife, I will and bequeath to my son-in-law William Cullen Bryant, enough to make the one-eighth interest, I gave him during my life time, fully equal to one-sixth of this entire property. The remaining five-sixths I will and bequeath as fol-

lows: One-sixth to my daughter Mary Whiting Bryant; one-sixth to my daughter Emily Sperry; one-sixth to her husband James A. Sperry, and two-sixths or one-third to my son Thomas Pollock Peters.

"The remaining property I die possessed of, after the death of my wife, this to include every description of property I own, I will and bequeath as follows: One-third to Wm. C. Bryant and his wife Mary in two equal shares one-sixth to each; one-third to James A. Sperry and his wife Emily in two equal shares, one-sixth to each; and one-third — two-sixths to my son Thomas.

"The property I have thus willed to my daughter Emily, including her interest in the *Times* should she die without issue, I hereby will and bequeath to her sister Mary and her brother Thomas in equal shares. Should Mary die, I hereby will and bequeath all her property derived from me, in equal shares to her child, or children and the children of her lamented sister Julia, these children to rank equally as though they were the children of one and the same mother.

"The property I have hereby will * and bequeathed to James A. Sperry, one-sixth of all my possession, shall be his in full during his natural life and shall be inherited by his children should he live to have lawful issue, whether by his present or any future lawfully wedded wife. His widow (should my daughter Emily die, and should he marry again) should she be childless, shall have her dower right respected. Beyond that, I will and bequeath this property if James A. Sperry dies without lawful issue to my legal heirs."

The appraiser found that the estate given to the appellant James A. Sperry was a "survival life estate" with remainder to his children, if any, and if none, to the legal heirs of the testator; and that as the disposition of the remainder was uncertain and contingent it should be taxed at the highest rate, viz., five per cent. The learned surrogate confirmed the report, excepting as to the assessment upon the contingent remainder, which he held should be reserved for future adjustment, upon the authority of *Matter of Howell* (34 Misc. Rep. 432).

While the peculiar language of the will renders the testator's intention not perhaps altogether free from doubt, I have reached

* *Sic.*

the conclusion that he meant to give the appellant an absolute one-sixth of the estate in fee.

The settled rule of construction applicable to the case is well stated in the head note to *Roseboom* v. *Roseboom* (81 N. Y. 356) that "where an estate is given in one part of a will in clear and decisive terms, such estate cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate." This rule has been frequently enunciated and enforced in the Court of Appeals. (See *Campbell* v. *Beaumont,* 91 N. Y. 464; *Byrnes* v. *Stilwell,* 103 id. 453; *Washbon* v. *Cope,* 144 id. 287; *Benson* v. *Corbin,* 145 id. 351; *Goodwin* v. *Coddington,* 154 id. 283, 286.)

In *Roseboom* v. *Roseboom* (*supra*) the testator gave to his wife "one-third part of all my property, both real and personal, and to have the control of my farm as long as she remains my widow, * * * and at the death of my wife *all* my property, both real and personal, to be equally divided between my eight children;" and it was held that she took a fee in the one-third.

In *Campbell* v. *Beaumont* (*supra*) the will provided as follows: "I leave to my beloved wife, Mary Ann, all my property * * * to be enjoyed by her, for her sole use and benefit, and in case of her decease, the same, or such portion as may remain thereof, it is my will and desire that the same shall be received and enjoyed by her son Charles;" and it was held that the widow took an absolute title, and, therefore, the power to dispose of the whole estate, unaffected by the provision as to her son.

In *Benson* v. *Corbin* (*supra*) the testator gave certain real estate to two children, but provided in a subsequent clause that in case of their death without issue, the property so devised to them "and their issue" should go to a named beneficiary. The court held that the children took an absolute fee, and Judge FINCH in the opinion stated (p. 359) that the rule is "well settled, that where there is primarily a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity, the estate thus given will not be cut down or lessened by subsequent words which are ambiguous or of doubtful meaning. If a slight circumstance or a slender reason will in ordinary cases prevent the application of the general rule, the circumstance or the reason must be strong and

decisive where the construction collides with a plain devise in fee, and forces a change of its terms by cutting it down to a lesser estate. *We do not easily trade a certainty for a doubt.*"

The "general rule" referred to by Judge FINCH is the rule that where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, followed by a devise over in case of his death without issue, the words refer to a death without issue in the lifetime of the testator, and the primary devisee surviving the testator takes an absolute fee. This rule is declared in some of the cases already cited, and among many others in the cases of *Livingston* v. *Greene* (52 N. Y. 118); *Stevenson* v. *Lesley* (70 id. 512); *Quackenbos* v. *Kingsland* (102 id. 128); *Vanderzee* v. *Slingerland* (103 id. 47); *Goebel* v. *Wolf* (113 id. 405); *Matter of Tienken* (131 id. 391, 403); *Stokes* v. *Weston* (142 id. 433); *Miller* v. *Gilbert* (144 id. 68, 74); *Matter of Russell* (168 id. 169, 178). It is important to bear both rules in mind in the solution of the problem herein presented.

The will of Mr. Peters appears to have been written or dictated by himself. It is the will of an intelligent and educated man, and is free from the language of legal technicality. The words are to be given their natural and ordinary import. He stated that it was his "earnest desire to have the business of The Brooklyn *Daily Times* conducted after my death as during my lifetime, under the firm name of B. Peters & Co. so long as any member or members of my family, *including my sons-in-law*, may retain a controlling interest in the establishment." He left, in addition to his widow, a son and two married daughters. He included the sons-in-law as members of his family, and he gave to his son one-third of his estate, and to each of the remaining four — his daughters and their husbands — an equal interest. It was obviously important if the business was to continue without a break upon his death that there should be no uncertainty as to the legatees in case of the death of any during his lifetime. He accordingly provided for the disposition of the shares given to Emily and to Mary in case of their deaths or the death of either, and in these instances the court below has correctly held that the death referred to was one occurring in his lifetime. The same meaning should attach to the final sentence in the first citation from the will herein quoted, viz., that if James

A. Sperry dies without lawful issue his share should go to the testa-tor's legal heirs. This construction is not only in accord with the uniform rule of the adjudicated cases, but is in harmony with the provisions referring to the possible death of Emily or Mary or both. No good reason exists for a conflicting or heterogeneous construc-tion of precisely similar provisions. A union of interests and har-mony and equality in distribution appear to be the dominant ideas in the general benefaction.

Do the remaining suggestions in relation to James A. Sperry's share necessarily indicate an intention to reduce his one-sixth to a life estate instead of leaving it as absolute as is each of the other shares? I think not. His residuary share is expressly given to him in conjunction with the share given to his wife Emily, one-third to be given to the two, "in two *equal* shares, one-sixth to each." Emily's share, as has been said, is, and has been held to be, absolute, and it may well be doubted if a life estate could be regarded as "equal" in all the senses in which the word may be here used. The testator adds the words "the property I have hereby will * and bequeathed to James A. Sperry, *one-sixth of all my pos-session*, shall be his in full during his natural life." These words do not suggest the idea of diminution but rather of enlargement — the property I have given him is to be his "*in full.*" The words "during his natural life," which otherwise might be assumed to con-vey a limitation of the estate, are, however, directly coupled with the statement that the property so given to him in full "shall be *inherited* by his children should he live to have lawful issue." This expression is not at all indicative of an interest to be acquired by the children under the will, but rather of an inheritance to come to them upon their father's death. They are to succeed to the estate not because the testator devises it to them as a *gift*, but because they are to *inherit* it from their father to whom he has devised it as an estate of inheritance. The entire clause is the testator's manner of saying that he gives this one-sixth of his estate to his son-in-law and his heirs or lawful issue — the creation of an undoubted fee. And a very significant and generous desire is further added in the statement that should his daughter, Mrs. Sperry, die and his son-in-law remarry, the latter's widow, such

---

* *Sic.*

second wife, should still " have her dower right respected." Now there could be no dower right to be respected if the husband had but a life estate in the lands.   The statute provides, section 170 of the Real Property Law (Laws of 1896, chap. 547), that " a widow shall be endowed of the third part of all the lands whereof her husband *was seized of an estate of inheritance* at any time during the marriage." · It, therefore, appears that when the provisions of the will which have been held to limit the appellant to a " survival life estate " are carefully analyzed, they not only fail to cut down the prior gift by clear and decisive ·terms of reduction, but are entirely consistent with the preservation of the greater devise. But as the cases cited show, the rule of law would still require that construction to be adopted which would operate in favor of the fee, were the words of diminution ambiguous or uncertain.

It follows that the order should be reversed and the proceedings remitted to the Surrogate's Court for an adjustment of the transfer tax in accordance with the decision of this court.

All concurred.

Decree of the Surrogate's Court of Kings county modifying transfer tax so far as appealed from reversed, with ten dollars costs and disbursements, and proceedings remitted to the Surrogate's Court of said county for an adjustment of the tax in accordance with the opinion of HIRSCHBERG, J.